THE NATCHEZ.

NEW ORLEANS NAV. CO. et al. v. WATSON.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

No. 410.

SHIPPING—INJURY TO SEAMAN—LIABILITY OF VESSEL.

Where it was sought to recover damages against a steamboat for personal injuries to one of her crew on the ground that the mate, being in command at the time, was directing the loading of bales of cotton from a wharfboat, and in the course thereof ordered and personally assisted in the negligent act, causing the injury, *held*, upon the testimony, that he was not so present directing or assisting; and that, as libelant was cared for at the time, returned to the port of New Orleans, paid full wages to the end of the voyage, and given a certificate entitling him to admission to the United States marine hospital, he could recover nothing further.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel in rem by Albert Watson against the steamboat Natchez to recover damages for personal injuries. The steamboat was released on bond, and the district court, after hearing the evidence, rendered a decree for libelant in the sum of $250. The New Orleans Navigation Company, claimant, and J. H. Menge have appealed.

John D. Grace, for appellants.

O. B. Sansum, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge. The appellee, Albert Watson, exhibited his libel in the lower court against the steamboat Natchez, her tackle, apparel, and furniture, in an alleged cause of tort, civil and maritime, and thereinafter alleging the business of the steamboat as to the carrying of freight and passengers between New Orleans and Vicksburg, his own employment thereon as a mariner, the arrival of the boat in the month of January, 1894, at a certain wharfboat at Vicksburg, for the purpose of taking upon the said steamboat certain bales of cotton, the entering of libelant and others of the crew upon the business of loading the said cotton, particularly charged in the fifth article as follows:

"That, wholly neglecting to observe any care and caution whatsoever in the premises, and while libelant's attention was exclusively directed, as aforesaid, to the handling of a certain bale of cotton on deck of said steamboat Natchez, said Andy Sullivan, then being in command of said steamboat Natchez, caused a certain other bale of cotton to be brought from said wharfboat, and to be rolled upon a certain other bale of cotton on the deck of said steamboat. And the said bale of cotton so brought by the order of said Andy Sullivan being upon and on top of the said other bale, the said Andy Sullivan directed the men then handling it to push it down from said bale, and to throw it upon the deck of said steamboat Natchez. That the men then handling said bale of cotton warned and cautioned said Andy Sullivan against throwing said bale of cotton down upon the deck of said steamboat, because it might turn over and roll down upon and against said libelant; but the said Andy Sullivan, wholly disregarding said caution, not only ordered said bale of cotton to be immediately thrown upon the deck of said steamboat Natchez, but aided and assisted in pushing it over, and in consequence of the negligence and carelessness of said Andy Sullivan said bale of cotton fell down, turned over, and rolled against and upon libelant, and libelant's foot and leg were then and there crushed, cut, and wounded by said bale of cotton."

The libel further alleges pain and suffering, necessity for medical advice and surgical operations, hindrance from performing work, and the right to recover damages therefor. Process in rem was issued; the steamboat was seized; the appellants claimed the same, and obtained possession under a bond of release, and at the same time answered the libel by specific and general denials; charged that libelant was injured through the negligence of himself and fellow servants, without any fault on the part of the boat; and, further, averred that after libelant was injured the officers of the boat gave the libelant such care and attention as the means at hand permitted, brought him back to New Orleans, the place of shipment, paid his full wages for the trip for which he had shipped, and gave him a certificate entitling him to admission in the United States Ma-

rine Hospital at the port of New Orleans, and in that institution the right to such medical, surgical, and other care and attention as he might stand in need of; all without charge to the libelant. The evidence of about 15 witnesses, officers and members of the crew, was taken; and the cause was submitted to the then presiding district judge, who gave a decree for the libelant for the sum of $250.

The liability of the boat seems to be based upon two points: First, that the mate, Sullivan, was in command of the boat, having full power and authority to direct and command all persons then and there in and about the business of the boat; and, second, that the mate, Sullivan, was present at the identical time and place when and where the libelant was injured, and then and there caused the same, although duly warned of the danger, as specifically set forth in the fifth article of the libel above quoted. The evidence shows that the master of the Natchez, after landing her at the wharfboat in question, retired to his room; but there is no evidence to show that thereby he abdicated his command as master, and turned it over to the first mate. It is true that the matter of loading the cotton from the wharfboat on the Natchez was under the direction of the first mate, Andy Sullivan, and that he was generally superintending the same; but the real issue is whether, at the time the libelant was injured, he (the mate) was at that particular place, directing and commanding the improper handling of the bale of cotton, the fall of which injured the libelant. On this issue the evidence of the libelant and his witnesses fails to satisfy us, and we think it is fully overcome by the evidence of the claimants, to wit, of the mate, the clerk of the boat, and other intelligent witnesses, who are positive that at the time the bale which injured the libelant was thrown down the mate, Andy Sullivan, was not there, and only came to the place after the injury. The libelant himself, while he says that the mate was present, shows by his evidence, and the circumstances surrounding him at the time, that he did not see the mate. If he did see him, then, while his business required him to be, and his evidence shows that he was, using his best efforts to roll his bale across the deck of the Natchez out of the way of succeeding bales, he was actually stopping and looking backward, which would tend decidedly to show the contributory negligence with which claimants charge him. Charles Gospel, known by some of the crew as "Jamaica," is the libelant's principal witness. He was engaged, with one Simon Jackson, in rolling the bale which caused the injury to libelant, and we quote from him:

"Andy Sullivan asked me what I was stopping for, and I said, 'There is a man down there;' and he said, 'Shove that bale there;' and he put his stick against the bale, and pushed the bale over, and the bale fell over on his leg."

Examined in detail by libelant's proctor, he said:

"Q. And when you got there with your bale of cotton, the mate was—was up there? A. Yes, sir; he was up there. Q. Then the mate says to you, 'What are you stopping for?' A. Yes, sir. I stopped first. Q. Then he said, 'What are you stopping for?' A. Yes, sir. Q. And you said to him what? A. I said, 'I want to let this man cutting through here—this man in front of me with the bale,' and he said, 'Shove that over.' Q. What did you say to the mate? A. I told him I wanted to let this man go up, and he said, 'Shove that

bale of cotton over.' Q. What did you say to him? A. I told him there was a man there in the way. Q. And he said what? A. He said, 'Shove it over,' and he put his stick against the bale, and I turned the bale loose."

Again, he testifies:

" "When he said, 'Shove that bale over,' of course I put the bale loose, and he put his stick against it, and it fell down, and struck this man in the leg. Q. Why did it fall down? What made it fall down? A. Because, after he pushed it over, I turned the bale loose, and it fell."

On cross-examination, Gospel gives this account:

"I stood at the end, with the cotton hook in my hand, and he [meaning the mate] stood at the other end, and he told me to shove it over, and I told him the man was standing working below. He had a stick about the size of my two fingers, and he said, 'If you don't shove that bale over, I will skin you,' and I turned it loose, and the bale fell on his leg."

Bill Sherman, a witness for libelant, who says he is a member of the crew who stood by and witnessed the accident, tells how the libelant got hurt as follows:

"Well, he was rolling a bale about the fourth or fifth ahead of me, and he rolled his bale over, and the gang was behind me, and the mate said to him, 'Shove it over.' Question by libelant's proctor: Says to who? Answer: To Jamaica [Charles Gospel] and Simon. They didn't seem to shove it over, and he said, 'Shove it over, you son of a b——;' and he jabbed it over with a stick, and it fell on his leg. Then he said, 'Why did you shove that bale on that man, you son of a b——?' and he jabbed at him, and struck him; that is, Jamaica."

But it would accomplish no useful purpose to go through with all the inconsistent and conflicting evidence of the libelant's witnesses, of which the above is a fair sample. After a careful reading, the story told by them seems to us to be wholly improbable. On the other hand, Simon Jackson, who was assisting Charles Gospel in handling the bale which injured libelant, swears positively that the mate was not there at the time, and he is corroborated by the mate himself, the second mate, the clerk of the boat, and by other bystanders.

The answer in this case alleges, and the evidence shows, that the libelant, after he was injured, received such care and attention as the means at hand permitted; that he was returned to the port of shipment, was paid his full wages, and was given a certificate entitling him to admission to the hospital. It is well settled that in case of injury by the fault or neglect of officers the seaman is entitled to full wages, passage home, and for keep and medical attendance. The Centennial, 4 Woods, 50, 10 Fed. 397, and authorities there cited. Whether in cases of the kind other damages can be recovered by process in rem, we abstain from deciding. The decree appealed from is reversed, and the cause is remanded, with instructions to dismiss the libel.